M'Kean, Chief Justice.
This action was tried by a Jury, in last January Term, and a verdict taken for the plaintiff, for £298 8 1; to wit, £41 8 1, for an uniform suit of clothes, which he claimed as a grant in 1779, from the State; and £257 for half pay as a captain in the State-Navy, from February the 13th, 1781, until July the 1st, 1783, together with interest from the said 1st of July; subject to the opinion of the Court on two questions stated.
1st. Whether clothing received by the plaintiff as an officer of the State-Navy, from the Commonwealth, in consequence of a Resolution of the Legislature, passed on the 24th of March, 1779; or in consequence of an act of the Legislature, passed the 1st of March, 1780, is to be debited to the plaintiff, or considered as a gratuity; and, if debited, at what price?
*207 2d. Whether the plaintiff is entitled to half-pay from the time of his discharge, until the 1st of July, 1783, and interest thereon from that day?
These questions have been argued by Messrs. Ingersoll, Lewis, and Serjeant, for the plaintiff; and, by Messrs. Dallas, and Wilcocks, for the Commonwealth ; they have been considered by the Court, and we shall now deliver our opinions.
The answer to the first question depends on the construction of a Resolve of the General Assembly, passed on the 5th of December, 1778, in page 252, of the Journals of Assembly, published by M. Hillegas; which is, “ that all such matters, as may “ appear to the Council to be absolutely necessary to the comfort " of the troops of this State, be sold to them for one fourth part " the original cost, for cash only, &c.” And of another Resolve of March the 13, 1779, in page 337, which is, " that to " every officer of the said troops, a complete suit of regimental " uniform be furnished every year by this State, to be charged " to the officer, at the price for which the said uniform might “ have been purchased at the commencement of the war, &c.“ And, of an act of Assembly, passed March the 1st, 1780, whereby a complete suit of uniform was directed to be given annually to each officer gratis during the war.
Respecting this, there seems to have been a Legislative construction. For, it appears in the Journals of the Assembly, page 552 and 555, of the 14th and 18th of December, 1780, that the Legislature would not charge the officers with the clothes, &c. furnished them, at the specie price. From which it may be clearly inferred, the clothes, that had been furnished them, were to be paid for in Continental bills of credit only; and, under the second resolve before cited, the price was to be regulated by the price at the commencement of the war.
Without the aid of this authority, I should have been of opinion, that the clothes, thus furnished the officers, were to have been paid for in the Continental bills of credit, and that this was the intention of the then Assembly : Because, first, whatever might have been their private sentiments respecting these bills being depreciated, they deemed it inexpedient to acknowledge it in their public character. Secondly; because, Continental money was then by law equal to specie, and it was penal to make a distinction between them. And, lastly, because it is manifest, they intended to be generous to, or at least to relieve the known distresses of, the officers of the State, both in the army and navy. For, by the first resolve, the Assembly directed, that the officers should be furnished with the articles necessary for them, at a fourth part of the then original costs, for cash only ; and by the second, they were to be furnished with a complete suit of regimental uniform, at the price for which it *208 might have been purchased at the commencement of the war, intending thereby a further gratification ; which at first view may appear paradoxical. Afterwards, by an act of Assembly, a complete suit of uniform (the particulars of which are specified in the 8th section) was allowed to be given annually to each officer gratis, during the war. Let it be assumed, for illustration, that a complete suit of uniform, at the original cost on the 5th of December, 1778, would amount to £240, Continental money; the officer for this was to pay a fourth part, or £60. The depreciation of the Continental money having been since fixed by law to have been on that day fix for one, the specie price to be paid by the officer would be £10. On the 13th of March, 1779, the same specie price at the commencement of the war being allowed, for a complete suit of uniform, to wit, £40, the officer was to pay that sum in Continental money, which, according to the same scale fixed by law, would amount only to £3 6 8, the depreciation then being twelve for one. As to this point, therefore, I think, if the plaintiff is to be debited at all, it can be only for this last sum, or in that proportion.
With respect to the second question, it appears to me to be involved in obscurity and doubt; but in such a case I shall conceive it less injurious to err (if I do err) in favour of the individual than of the Commonwealth; because the error against individual may be very distressing; whereas if against the Commonwealth, it will hardly be felt; and I know I must contribute my proportion of the money awarded.
It seems to be unnecessary to cite the several resolves of Congress, allowing half pay to the officers of the army of the United States, or of the Assembly of Pennsylvania on the same subject, respecting the troops of the State, as the principal ground on which our present decision must stand is the act of Assembly, intitled, “ An act for the more effectual supply and honorable reward of the Pennsylvania troops, in the service of the United " States of America,” passed the 1st of March, 1780. In the 15th section it is enacted ; “ That the officers, &c. of the navy of this “ state, who were in service on the 13th March, 1779, and shall " continue therein till the end of the present war, or till honorably discharged, shall be entitled to the allowances and benefits “ herein before granted to the military officers, &c. respectively, of the Pennsylvania troops, as to half pay and clothing ; “ and to the like supply and distribution of the articles above “ enumerated, subject to the same limitations and conditions; " the half pay of the officers of the navy to commence at the “ expiration of the present war, or their discharge." And the resolve of the Assembly, of the 25th of March, 1784, is in these words, " Resolved, that as one of the designs in granting half *209 " pay to the said navy officers was to place them on a footing " with the officers of the army, that the officers of the navy of " this State, entitled to half pay for life, under the resolutions of " the 24th of March, 1779, and confirmed by act of Assembly, " passed the 1st of March 1780, be allowed five years full pay in " lieu thereof, to be paid at the same time, and in the same manner, that the officers of the army, in the line of this State, are " or shall be paid, and that their accounts be liquidated and settled by the comptroller general, and certificates given them.”
From the foregoing it appears, that a distinction has been made, as to the time when the half pay should commence, between the officers of the army in the line of this State, and those of the State-Navy; the half pay of the former is confined to such of them as should continue in the service of the United States during the war, and was to commence at the conclusion of the war ; but that of the latter was to commence at the time of their discharge from service. The plaintiff was honorably discharged from service on the 13th of February 1781, and was incontestibly entitled to half pay from that time, until the 25th of March, 1784, when he commuted his half pay for life, for five years full pay. The sole question then is, whether this act of commutation has barred the recovery of the half pay then due to him, to wit, for three years, one month, and twelve days, as well as his future half pay?
It has been contended for the Commonwealth, that his accepting a certificate for five years full pay, is a bar to the arrearages ; for, that by a resolve of Congress of the 22d of March, 1783, adopted by the Assembly, on the 22d of September; 1783, it is directed, “ that, with respect to retiring officers, “ entitled to half pay for life, the commutation, if accepted by " them; shall be in lieu of whatever may be how due to them, since " the time of their retiring from service." On this the whole difficulty respecting the plaintiff’s claim rests.
In answer, it has been asserted (and acceded to) that the plaintiff, at the time he received his certificate from the Comptroller General, as well as the other Navy-Officers, gave him notice, that they meant not thereby to relinquish the arrears of half pay then due to them respectively ; and it was farther contended, that the last mentioned Resolves did not relate to the officers of the State-Navy of Pennsylvania, but to the officers of the army, in the service of the United States only.
It appears to me, that the clause in the Resolve of the 22d of September, 1783, relates to retiring officers of the army, and that the navy of the State of Pennsylvania was not at all then in the contemplation of the Congress, or Assembly. Besides, none of the officers of the State Navy had retired ; but the plaintiff and four or five others had been honorably discharged from the ser *210 vice by the Supreme Executive Council of Pennsylvania. Who the retiring officers of the army were, I do not well know ; perhaps those, who became supernumerary, or reduced, in consequence of the Resolve of Congress of the 21st of October, 1780, or such as had retired, with the consent of the Commander in Chief, after notice of the provisionary articles of peace, of the 30th of November, 1782. And it is at least doubtful, whether the half pay of these officers was to commence before the conclusion of the war ; for, those who continued to undergo the fatigues and hardships of a camp, and to endanger their lives in battle, until the termination of the war, seemed to have a greater claim on their country, than those who retired from the service ; and of this opinion was the Congress, which appears in their Resolve on General Maxwell’s case, on the 8th of August, 1780. The words in the Resolve, regarding reduced officers, of the 21st of October, 1780, are, that they " are to be allowed half pay for life;" but no mention is made of the time when it was to begin, nor did the Congress make any provision for the payment of it, prior to the conclusion of the war. Be this as it may, it is certain, that no officers of the army in the line of the State, were entitled to half pay, by any Act or Resolve of the Assembly, excepting such as should serve 'till the end of the war, and that those in their navy were entitled to it from the time of their discharge. The navy officers could not be placed on a footing with the officers of the army of the State, if the latter got five years full pay in lieu of what was to become due to them, for half pay from the end of the war, and the former got only five years full pay, in the lieu of what was to become due to them, but also of several years of arrears then past, for the payment of which they had a legislative security. Besides, the officers of the army had large bounties in lands, not only from the State, but also from the United States ; but the officers of the State Navy had none. Could this have been the intention of the Legislature ? I should think not, because of the great inequality it would create, not only between their officers in the Land-Service, and Sea-Service, contrary to their express declaration, but also between the latter themselves ; for, by accepting the commutation, the one would lose more than another, in proportion to the times they were respectively discharged. This would be so unreasonable and unjust, that unless they had expressly and manifestly thus declared, I am inclined to entertain a contrary sentiment. Their design rather appears to have been, to place their Navy-officers on a footing with the most favored of their Land-officers, because they expressly allowed them half pay, from the time of their discharge ; but to the others, only from the end of the war. It is a pity this affair has been left so embarrassed ; but the best conclusion *211 I can form, upon the whole, is in favor of the plaintiff, on this question also.
Shippen and Yeates, Justices, concurred with the Chief Justice in the first point ; but differed from him in the second point.
Bradford, Justice, concurred with the Chief Justice in both points.